Please be seated. We now have our third case of the morning. Madam Clerk, will you please call the third case? Okay, I'd like the attorneys to step up for the parties. I'd like for you to tell the court who you represent and approximately your name and approximately how much time your argument will take. Please step up to the podium. Good morning, Your Honors. This is Assistant Appellate Defender Rachel Moran, and I represent Janice Richardson. I plan to use approximately 15 minutes, and if I can reserve about three of that for rebuttal. That's fine. Thank you. Good morning, Counsel. Good morning, Your Honors. I'm Assistant State's Attorney Mary Needham, and I represent the people of the state of Illinois, and I estimate I will need 10 minutes. Very good. Ms. Moran, you may proceed with your argument. May it please the Court. Your Honors, the defense attorney in this case tried to do what defense attorneys have been doing for decades, if not centuries, challenge the credibility of his client's alleged confession. The United States Supreme Court has labeled the right to challenge a confession essential, meaningful, and fundamental. In this case, the Court prevented counsel from doing just that when it barred all questions and argument about alternative ways in which the statement could have been recorded. The effect of these rulings was to create an unfair trial where the state was allowed to elicit evidence about why the jury should believe the statement, and Janice was not allowed to argue they should not. In Crane v. Kentucky and People v. Mellock, the United States and Illinois Supreme Courts both held that the circumstances surrounding the taking of a confession are, quote, highly relevant to the question of guilt or innocence. And this rule is even codified in Illinois in a statute which states that the circumstances surrounding the taking of a confession may be submitted to the jury as bearing upon the credibility or the weight to be given to that confession. In People v. Buck, the Illinois Appellate Court held, addressed a state's failure to videotape a confession, just like happened in this case, and held that the method in which a confession is memorialized is, quote, clearly one of the circumstances the jury must consider when evaluating the weight to be given to that confession. The jury in this case was not allowed to consider any of those circumstances or the failure to videotape. There was an argument. Ms. Richardson's counsel did argue to the jury and was allowed to question the witnesses about the fact that these were not her words, that this was a summary. There was a cross-examination of Assistant State's Attorney Lance to the effect that she wrote down what Ms. Richardson said and that she didn't take it verbatim. That's true, Your Honor. She did acknowledge that this was a summary, although she did say she used Janice's words. But the counsel is not allowed to follow up on any of that. The entire redirect of A.S.A. Lance was about the reliability of the statement. The State was attempting to elicit evidence bolstering that statement by saying by A.S.A. Lance testified that she used Janice's words, that she didn't write anything that Janice didn't tell her, that she didn't simply say what she wanted, write down what she wanted the statement to say. Instead, she wrote down what Janice wanted the statement to say. All of that was on redirect, and all of that was quite clearly aimed at bolstering the reliability of that statement and getting the jury to believe that it was accurate and it was true. On recross, however, defense counsel attempted to ask questions about how the statement could have been, in fact, more reliable. He asked if the statement could have been videotaped. He asked if the police department was capable of videotaping the statement. He asked if the statement could have been recorded in its entirety. The court sustained objections to all of these arguments. And it's important to note, the State conceded in its brief that these questions are relevant. The State's only response to the questions specifically to A.S.A. Lance is that they were beyond the scope. Well, beyond the scope, as your honors are aware, the relevant rule of law here is Illinois Rule of Evidence 611B. And what it says is that the scope of cross-examination includes the subject matter of the direct examination that immediately preceded, anything affecting the witness's credibility, and any other matters in the court's discretion. Well, here, it's pretty obvious that what defense counsel was cross-examining about is exactly what the topic of the redirect was, whether the statement was reliable. And so where that's the State's only objection to those questions, its argument falls because it was well within the scope. And as to Detective Moriarty, the same issue arose in Detective Moriarty's testimony, except it came on the initial cross-examination. And as to that, the State, again, admits that it's relevant, but really the State's only response to the testimony that all the questions the court sustained with respect to the detective is that the detective was not the right person to be testifying about that. Well, there are two problems with that argument. The first is that the State didn't make – I am inferring from that argument that it's similar to a speculation objection, and here the State only – it didn't specify any grounds for its objection. So all this court can look at, its review is limited to relevance, and the State has conceded the questions are relevant. If the State is attempting to make a speculation objection, it fails. Next, Detective Moriarty testified in detail about the oral statement Janice allegedly gave. She testified that she was present for the handwritten statement. She testified about how ASA Lance recorded the statement. And the State would have this court believe that somehow the detective wasn't capable of testifying about how it wasn't recorded. Well, that doesn't work. The detective was perfectly capable and, in fact, did testify about the circumstances surrounding the actual taking of the statement. And she would have been perfectly capable of testifying about how it wasn't recorded. And the errors here, it's not just questioning that was precluded. The court compounded these errors in several ways. The first is by precluding all argument and closing argument as to this topic. Defense counsel was prevented from arguing to the jury why the statement wasn't reliable. I thought he did advance an argument. He did say that ASA Lance chose words such as irritated and angry, chose buzzwords, as he referred to them, that weren't Janice's words and were meant to prejudice her. I thought that was the argument he made about why the jury should not give her statement much weight. Your Honor, specifically in response to the States, the State argued repeatedly, in opening, close, and then again in rebuttal. But in opening, close, it argued repeatedly, these were Janice's words. You know she's guilty because she said so herself. You can believe it because the statement is her own words. And in response to that, defense counsel tried to argue there were more reliable ways of recording this statement. Who was in control of how the statement was recorded? The State. He made numerous arguments along these lines, and the court sustained objections to all of them. And so he, in fact, was prevented from directly responding to the State's argument. And then after the court sustained those objections, the State got up again in rebuttal and said, you know the statement's reliable because it's her words. And so it was one-sided, the way the closing arguments went. The other way the court compounded the error, though, is by announcing to the jury himself, videotaping is only done in homicide cases. And this came in the cross-examination of the detective. First of all, that's incorrect. The detective may well have testified that videotaping is typically done in homicide cases, or that it's only mandated in homicide cases. But there's certainly nothing preventing the State from recording, and it would have been a more accurate means of doing it. And the other problem with that is it left the jury with the unmistakable impression that defense counsel's theory was inadequate, was meritless. The court told him, move on, move on to a different subject matter, and announced in front of the jury that videotaping wouldn't be done in this kind of case. The errors here were clear, and they prejudiced Janisse. This is a preserved error, and therefore it's the State's burden to prove beyond a reasonable doubt that the error was harmless. In other words, the State has to show that it could not have even possibly affected the conviction in this case. And that's not possible. The evidence was not overwhelming, apart from this. The confession was by far the strongest evidence, and all this court needs to do is look at the State's closing argument. The State makes pretty clear that it believed this was the strongest evidence. Tell us why the evidence wasn't overwhelming. Your Honor, what we have here is a situation where Janisse was admittedly the caretaker at what may have been the time in which the injury occurred. But we don't know how it happened. Apart from the statement, there would be no evidence at all as to how it happened. Additionally, the doctors disagreed as to whether significant force was to be used. And this isn't a case of warring State and defense experts. These are the State's two experts that they presented. One doctor said it would require significant force to create this kind of injury, and one doctor said it would not. And the doctor who said it would not was a radiologist. The doctor who said it would was simply an ER doctor who had never testified in court about the cause of a child's... Well, I thought the radiologist said that it was in her experience that this type of spiral fracture does not happen in a nonambulatory child, so that it raises a red flag for child abuse. It does, Your Honor.  But the key factor here is that the State was required to prove that the mental state in this case was knowledge or intent to cause great bodily harm. And that's why the question of whether significant force was required is so crucial. And it is closely balanced. There's one doctor saying yes and one doctor saying no. But that then goes to, when you say the confession is the centerpiece of the State's case, that really goes to Janice's state of mind. And the confession doesn't say anything about her state of mind. She was permitted to argue to the jury that this was an accident. She was, Your Honor, and there were two theories in this case. And that perhaps speaks to the other error that occurred in this case, which should not even be in question, which is the Rule 431B error. The court clearly did not ask if the jurors understood any of the Rule 431B principles. And according to the Illinois Supreme Court's decision in People v. Wilmington, that is clear error. So the question in that case is simply whether the evidence was closely balanced. So even if this Court accepts the statement in its entirety, and even if the jury, even if defense counsel was fairly precluded from contesting the statement, which we would absolutely say he was not, but even if the Court ignores that first issue altogether, the question is simply whether the evidence was closely balanced on the issue of mental state. And as Your Honor just pointed out, the statement doesn't indicate she intended to cause great bodily harm. The statement suggests two possible ways in which the injury could have occurred. The first is that Janice says she got irritated and she shook the child's thigh. And the second is that she roughly took him out of his car seat and his foot twisted all the way around. Well, as to the thigh injury, the injury here is a spiral fracture at the lower left tibia by the ankle. So shaking a child's thigh could not cause that injury. So all this Court is left with is she grabbed him out of his car seat and his foot twisted around. Well, that's not intent to cause great bodily harm. So the issue of mental state, the evidence is actually very closely balanced. But going back to the first issue, the statement itself was the crux. Even though it doesn't prove, or it is at least very close on the issue of mental state, it was still the crux of the state's case. It was still the only direct evidence as to what happened. Apart from that, the evidence is purely circumstantial. All it indicates is that Janice was the caretaker and that, as Your Honor noted, that the injury was certainly suspect for child abuse. But that's it. There's no other evidence. And the statement was the crux of the state's case, and defense counsel wasn't allowed to contest it. And People v. Mellack is telling on this point as well, because it says that the defendant has a right, regardless of how substantial or infirm the evidence, to familiarize the jury with all the circumstances surrounding its confession. That's the right that was denied in this case. And frankly, Your Honors, it was an entirely unnecessary error. Both the errors in this case were easily avoided, and the court was at fault for not avoiding these errors. And they precluded Janice by failing to ensure a fair jury trial, but also by effectively belittling her theory of defense in front of the jury. Anything further, Ms. Brewer? No, Your Honors. Not at this point. Thank you. Good morning. May it please the Court. The latitude permitted on cross-examination or re-cross-examination is within the discretion of the trial court. And those decisions should be reversed only when two requirements are met. First, there's a clear abuse of discretion. That means that the decision is arbitrary, unreasonable, and no reasonable person would agree with it. And two, it has resulted in manifest prejudice to the defendant. Before this Court even looks at the trial court's ruling, it should consider that the basic premise of the defendant's argument, that she was denied her right to advance a defense, is just not supported by the record. In opening statement, defense counsel argued only that defendant did not intend this injury. In closing argument, and I must say, these were without objections and the objections were not sustained. Defense counsel argued that theory and also this alternative theory that her statement to ASA Lance was not accurately captured in the written statement. Counsel argued, asked the jury to consider who had the opportunity to write down exactly what defendant said. He repeatedly, I'm sorry, counsel repeatedly argued that ASA Lance used buzz words that were not defendant's words and they were knowingly placed there in order to establish her guilt. Defense counsel told the jury that they knew defendant did not write those words and that ASA Lance did not give her the opportunity to write out her own statement, that the ASA controlled the manner in which the statement was presented to the jury. Defendant had no control over that. And this is important. Defense counsel argued that if the prosecution controlled the manner and if the prosecution wanted the jury to know how defendant demonstrated how she removed the child from the car seat, they could have presented her statement in a manner that the jury could have seen it for itself, but they chose not to do it. So there's no merit to a claim that the trial court's rulings deny defendant a right to present her defense. All of these arguments were based on the evidence that was elicited at trial. She was, there's just no merit to a denial of a right to her defense. But when you have Detective Moriarty on the stand, this is the state's direct, they're asking the detective about the statement that was made. Wasn't it clearly within the scope of the direct to ask on cross-examination, couldn't she have been given a paper and pencil or couldn't the statement have been recorded electronically in some way? I mean, what was the question? Well, in the first place, Detective Moriarty's statement was, as a witness to the written statement, was corroborating. She was not the person who took the statement. She didn't testify to taking any written words, you know, writing down defendant's words or capturing that written statement. But, I mean, the question, couldn't she have been given a pen and paper, doesn't require any expertise on Detective Moriarty's part to say yes or no, right? Right. But whether she could be given, and I would also say that we have not forfeited our argument that it was not relevant because we've argued in our brief that these relevant objections were properly sustained. But in any event, whether she could be given a pen and paper was not really relevant because Detective Moriarty was not the person who was writing down any statement.  So it was proper to limit to sustain these objections that were not relevant, would not lead to evidence that supported, that could lead to whether the ultimate facts were correct.     And I think it's a good argument to make. And it certainly was proper to exclude evidence that could confuse the jury or lead them to ponder or contemplate things that were not relevant. In any event, the trial court properly ruled on both ASA Lance recross examination that the statements, the properly sustained objections, the focus of redirect was very specific. And it had to do with defendant's words, whether she made corrections, whether her answers were based on, all confined to the written statement. And to the extent that counsel asked questions about that, that was permitted. To the extent that defense counsel sought to start introducing new questions. Were there other means? Were there videotape? Are there homicide investigations at Belmont and Western? And whether there are video capabilities were well beyond the scope of the redirect and properly excluded. And also the trial court properly limited cross examination of Detective Moriarty to relevant and pertinent and matters that would not confuse the jury. As an additional matter, any restriction on Detective Moriarty's cross examination, all that evidence about how the statement was taken was already admitted. The jury knew and defense counsel was able to argue that defendant was not given the opportunity to write her own statement. That was evident from ASA Lance's testimony. She took the written statement. She described in detail how she went through that. The obvious inference is that that's the way the statement was taken and then the defense counsel could argue that the defense counsel, that defendant was not given the opportunity to provide the statement in her very own words, controlling the statement. Even if the trial court, you find the trial court abuses discretion, you should find that the evidence is overwhelming and any error was harmless. The medical testimony was that this injury occurred, this spiral fracture was indicative of child abuse, that it would require some force because this child was not ambulatory. And in addition, you had a healthy infant that was dropped with defendant. And, you know, when the parents came to pick the infant up, he was crying. And shortly thereafter, the next morning, the extent of the injury was discovered. And defendant's statement that she was irritated and frustrated, that she shook the child when he wouldn't stop crying, that she shook his thighs for two minutes, twisting them inward, and then aggressively grabbed the child from his car seat in such a manner that his foot would be caught and twist all the way around, was ample evidence supporting defendant's guilt of aggravated battery of a child. And also, any error the trial court may have made with respect to limiting cross-examination was harmless. Additionally, it wasn't the trial judge who injected the, did not make this improper conveyance of what homicide cases were. In ASA Lance's re-cross-examination, defense counsel raised the issue of whether homicide investigations were conducted at Belmont and Western. And when Detective Moriarty testified the following day, when defense counsel tried that same line of questioning, the trial court was referring to the prior day's reference to the homicide investigations and was not conveying anything to the jury when he referred to the homicide investigations. We also submit that defendant has not established plain error with regard to the 431B admonitions. But there was an error, correct? By failing to ask the jurors if they understood the 431B principles? Well, the trial court did in detail describe the Zayer principles. Did the trial court ask the jurors whether or not they understood the 431B principles? No, he did not. According to Wilmington, they erred. Correct, that is an error. But as in Wilmington, the error is not plain error. And it's not just whether the evidence is closely balanced. It's whether the evidence is so closely balanced that this error alone took the scales of justice against defendant. And there's no evidence that closely balanced the people's evidence that defendant committed this knowing battery against the child. And there's no evidence that defendant was tried by a partial or biased jury. So for these reasons, we ask that you affirm defendant's conviction for aggravated battery. Thank you, Ms. Smeda. Ms. Moran, some brief rebuttal. May it please the Court, I just have two points on rebuttal, and they are both to correct misrepresentations, one of the record and one of the briefs. The first is the State began its argument by quoting extensively from defense counsel's closing argument and telling the Court that these questions were not objected to nor sustained. In fact, they were. All of the argument, excuse me, the argument. All of the arguments about who controlled the way the statement was taken, whose words they actually were, these things were all objected to and sustained. The Court sustained at least three, I believe, four questions or arguments in closing arguments, and they are exactly the arguments the State just said were not sustained. Additionally, with respect to the briefs, the State argued that it had not, conceded that the questions of Detective Moriarty were relevant, and I would turn this Court's attention to page 28 of the State's brief, which reads, while the circumstances surrounding the making of defendant's confession were relevant for the jury to consider, Detective Moriarty was not in a proper position to answer those questions. That is the State's argument, that she was somehow not capable of answering the questions. The State has conceded that the questions were relevant. Thank you, Your Honors. Thank you, Ms. Moran. I want to compliment Ms. Moran and Mrs. Needham on their arguments on the briefs, and this matter will be taken under advisement. This Court stands in recess.